UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KIRK SHAWN RIEDINGER,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]

    Defendant.

CASE NO. C16-1080-BHS-BAT

**REPORT AND RECOMMENDATION**

Kirk Shawn Riedinger appeals the ALJ's February 4, 2015, decision finding him not disabled. In that decision, the ALJ found Mr. Riedinger last worked in February 2013; that anxiety-related disorder (post-traumatic stress disorder, panic disorder, agoraphobia) and affective disorder (mood disorder versus major depressive disorder) are severe impairments; that Mr. Riedinger has the residual functional capacity (RFC) to perform medium level work subject to numerous non-exertional limitations; and that Mr. Riedinger cannot perform past relevant work but can perform other jobs in the national economy. Tr. 14-25. The Appeals Council

---

[1] The clerk is directed to update the docket, to reflect that Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration and is substituted for Carolyn W. Colvin as defendant in this suit.

REPORT AND RECOMMENDATION - 1

1  denied Mr. Riedinger's request for review making the ALJ's decision the Commissioner's final

2  decision. Tr. 1.

3  Mr. Riedinger contends the ALJ misevaluated the opinions of Ellen Walker, Ph.D., and

4  Susan Hakeman, M.D., and his testimony. He further argues the ALJ's step five findings are not

5  supported by substantial evidence, and that the Court should remand the case for further

6  administrative proceedings. Dkt, 10 at 1. As discussed below, the Court recommends the

7  Commissioner's final decision be **REVERSED** and the case be **REMANDED** for further

8  administrative proceedings under sentence four of 42 U.S.C. § 405(g).

9  **DISCUSSION**

10 **A.   Medical opinions**

11 The ALJ must give specific and legitimate reasons for rejecting a treating doctor's

12 opinion that is contradicted by another doctor, and clear and convincing reasons for rejecting a

13 treating doctor's uncontradicted opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

14 The Court may set aside the ALJ's decision if the ALJ's findings are based on legal error or are

15 not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

16 1211, 1214 n.1 (9th Cir. 2005).

17 *1.  Ellen Walker, Ph.D.*

18 Mr. Riedinger argues the ALJ erroneously rejected the opinions of treating doctor Ellen

19 Walker, Ph.D. Dkt. 10 at 8. The ALJ noted that Dr. Walker opined in a September 2013

20 statement and a June 2014 interrogatory that Mr. Riedinger had moderate to marked restrictions

21 of activities of daily living, marked to extreme difficulties in social functioning; marked to

22 extreme difficulties in maintaining concentration, persistence and pace; and repeated and

23 constant episodes of decompensation. Tr. 21. The ALJ agreed Mr. Riedinger has a "limitation

REPORT AND RECOMMENDATION - 2

on public interaction," but rejected the other limitations the doctor found on the grounds that they are "not supported by the claimant's activities of daily living, mental status examinations, or Dr. Walker's own treatment notes." Tr. 21.

The ALJ found Dr. Walker's opinions were inconsistent with her treatment notes that reflected Mr. Riedinger has only mild and moderate depressive and anxiety symptoms, and that his functioning improved with treatment, "not debilitating symptoms and an inability to function." *Id.* The ALJ may reject a doctor's medical where the opinion is not supported by his own medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Mr. Riedinger does not dispute this but argues the ALJ nonetheless erred because he did not cite to "specific exhibits" to support his finding, that the ALJ's finding is nothing more than an impermissible "general averment," and that the ALJ failed to provide a sufficient explanation as to why the treatment notes contradict the doctor's opinions. Dkt. 10 at 8.

The argument fails. This is not a case in which the ALJ failed to provide a sufficient discussion of the evidence, or the reasons for his determinations, as required by 42 U.S.C. § 405(b)(1). The ALJ did not merely aver that Dr. Walker's opinions are inconsistent with her records, as Mr. Riedinger claims. Rather, referring to Éxhibits 3F and 12F (Dr. Walker's treatment records), the ALJ accurately found the doctor's treatment notes document mild or moderate symptoms, "not debilitating symptoms and an inability to function." Tr. 21. The ALJ further discussed how the treatment notes were inconsistent with the doctor's opinions, finding the notes indicated Mr. Riedinger was functioning "better being more active and staying busy with household projects, visiting and spending time with others, and doing other activities including watching football games, going to the beach, metal detecting, sorting through coins, and taking a trip to California." *Id.* The ALJ further found that despite some anxiety, Mr.

REPORT AND RECOMMENDATION - 3

1  Riedinger could socialize regularly with a former coworker and neighbor; that Mr. Riedinger's
2  concentration was noted as being "better and good overall"; that Mr. Riedinger's ability to sort
3  through coins to locate rare or valuable coins is an activity that requires concentration; and that
4  the treatment notes contain nothing supporting the doctor's finding of "constant and repeated
5  episodes of decompensation." The ALJ further provided specific citations to the record in
6  support of these findings. Tr. 22.   Hence, the record shows the ALJ did not simply make an
7  impermissibly vague or conclusory statement about the inconsistency between the doctor's
8  treatment notes and her opinions as Mr. Riedinger claims.

9        Mr. Riedinger also argues the ALJ erred in failing to explain why the inconsistencies
10 between Dr. Walker's treatment records and her opinions undermine the doctor's opinions. Dkt.
11 10 at 8-9.  The ALJ is charged with evaluating the medical evidence. *Andrews v.* Shalala, 53
12 F.3d 1035, 1043 (9th Cir. 1995).  It is the ALJ's province to resolve conflicts and ambiguity in
13 the medical evidence. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999).
14 That is what the ALJ did here by finding that the doctor's treatment notes were inconsistent with
15 her opinions about the severity of Mr. Riedinger's limitations.  As discussed above, the ALJ
16 accurately recounted the findings contained in the treatment records, and contrasted the treatment
17 record notes and Mr. Riedinger's activities with the doctor's opinions.  Although the ALJ did not
18 explicate further about why mild to moderate symptoms are inconsistent with the doctor's
19 opinion that Mr. Riedinger is more limited, the Court cannot say it was unreasonable for the ALJ
20 to find the difference between the symptoms the doctor noted in his records and his opinion that
21 Mr. Riedinger has marked or extreme limitations.  This is because there is a facial discrepancy
22 between the symptoms observed and the degree of impairment found.  The Court thus rejects Mr.

REPORT AND RECOMMENDATION - 4

1  Riedinger's argument that the ALJ was required to provide a more detailed explanation

2  supporting his conclusion that Dr. Walker's opinions were inconsistent with her treatment notes.

3  Accordingly the Court concludes that the ALJ's finding is free of legal error and

4  supported by substantial evidence, *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985)

5  (Substantial evidence "'means such relevant evidence as a reasonable mind might accept as

6  adequate to support a conclusion.'"), and that the Court must uphold the ALJ's finding.  *See*

7  *Tommasetti v. Astrue*, 533 F.3d 1035, 533 (9th Cir.2008) (Court must affirm the ALJ's findings

8  if they are supported by inferences reasonably drawn from the record.).

9  Mr. Riedinger also contends the ALJ erred in finding Dr. Walker's opinions are

10 inconsistent with the mental status examination findings, and relied on Mr. Riedinger's non-

11 credible self-reports.  Dkt. 10 at 8-10.  Mr. Riedinger is correct that the ALJ did not cite to any

12 specific mental status examination, and did not provide any explanation about why the mental

13 status examinations were inconsistent with the doctor's opinions.  The ALJ accordingly erred.

14 *See Embrey v. Bowen*, 849 F.2d 418 (9th Cir.1988) (Conclusory reasons will not justify an ALJ's

15 rejection of medical evidence.).

16 Mr. Riedinger is also correct the ALJ erred in finding Dr. Walker's opinions were

17 primarily based on Mr. Riedinger's non-credible statements.  If a treating provider's opinions are

18 based "to a large extent" on an applicant's self-reports and not on clinical evidence, and the ALJ

19 finds the applicant not credible, the ALJ may discount the treating provider's opinion.

20 *Tommasetti v. Astrue*, 533 F.3d at 1041.  However, when an opinion is not more heavily based

21 on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting

22 the opinion.  *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008).  Here,

23 while Dr. Walker noted Mr. Riedinger's statements, there is nothing indicating her opinions were

REPORT AND RECOMMENDATION - 5

based primarily on these statements rather than on the doctor's observations, diagnoses, and professional assessment.  The ALJ accordingly erred in finding Dr. Walker's opinions were based primarily on Mr. Riedinger's self-reports.

Although the ALJ gave two invalid reasons to reject Dr. Walker's opinions the Court must nonetheless affirm the ALJ's assessment of Dr. Walker's opinions.  This is because where the ALJ provides at least one valid reason supported by substantial evidence, the inclusion of other erroneous reasons does not negate the validity of the ALJ's determination and is at most harmless error.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)

### *2. Susan Hakeman, M.D.*

Mr. Riedinger argues the ALJ erred in rejecting Dr. Hakeman's opinions because "the ALJ did not explain what weight if any he gave to her opinions or give any specific reasons to disregard her evidence." Dkt. 10 at 11- 12. Mr. Riedinger's argument focuses on the GAF scores of 50 that Dr. Hakeman assessed which he contends shows serious impairment of functioning, rather than any particular limitation that the doctor found.  *Id.*  The Commissioner does not contest that a GAF score of 50 is an indication of serious impairment but contends GAF scores have limited utility and are no longer the "industry standard" because they have been dropped from the latest version of the Diagnostic and Statistical Manual of Mental Disorders. Dkt. 11 at 6.

With respect to the question of whether the ALJ provided a valid reason to reject the GAF scores assessed by Dr. Hakeman, the Court finds the ALJ did not.  The ALJ's decision contains a boilerplate discussion of why GAF scores do not correlate with a finding of disability but fails to provide sufficient reasons to reject the GAF scores Dr. Hakeman assessed.  The

1  ALJ's discussion amounts to a determination that, as a matter of course, GAF scores are not
2  relevant evidence and can be ignored.  This is an erroneous view that is inconsistent with the
3  Social Security regulations.  A GAF score that is assigned by an acceptable medical source is a
4  medical opinion as defined in 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2), and an ALJ must
5  assess a claimant's residual functional capacity based on all of the relevant evidence in the
6  record, including medical source opinions, 20 C.F.R. §§ 404.1545(a), 416.945(e).  As such, the
7  regulations indicate that GAF scores are relevant evidence that should be considered—not
8  inconsequential evidence that can be ignored.   Therefore, because the ALJ in this case did not
9  reject Dr. Hakeman's GAF score based on legitimate reasons specific to his opinion, the ALJ
10  erred.
11       The Ninth Circuit Court of Appeals has not offered a detailed analysis of the role GAF
12  scores play in the disability determination and how an ALJ should approach them, and its
13  guidance on these issues is inconsistent.  For example, the court's treatment of the GAF score in
14  *Rollins v. Massanari*, 261 F.3d 853 (9th Cir. 2001), indicates that a GAF score is relevant
15  evidence bearing on the disability determination.  This is because the court supported its
16  conclusion that the ALJ properly discounted the claimant's testimony by noting that the doctors
17  who discharged her after treatment for addiction to painkillers "said that she had 'no restrictions
18  on activity' and gave her a [GAF] level of 70, 'indicating only mild symptoms and generally
19  quite adequate function.'"  *Id*. at 857.  By contrast, in a cursory, unpublished opinion, the court
20  indicated that GAF scores need not even be considered.  *Pinegar v. Comm'r of Soc. Sec. Admin*.,
21  499 Fed Appx. 666, 667 (9th Cir. 2012) ("[T]his Court has not found error when an ALJ does
22  not consider [GAF scores]." (citing *Chavez v. Astrue*, 699 F. Supp. 2d 1125, 1135 (C.D. Cal.
23

REPORT AND RECOMMENDATION - 7

2009))).  Because the approach in *Rollins* aligns with the Social Security regulations, the Court follows it here, and finds the ALJ's treatment of the GAF scores is erroneous.

Although the Court concludes the ALJ's erred, the error does not warrant reversal because Mr. Riedinger has not satisfied his burden of establishing harm.  *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (court may not reverse unless error is harmful, and claimant has burden of showing harm).  Dr. Hakeman did not opine that Mr. Riedinger is disabled or set forth any specific functional limitations that the ALJ should have addressed.  Although the doctor assessed GAF scores of 50, as a general matter, a GAF score is not, alone, dispositive of mental disability for social security purposes.  *See McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (citing Revised Medical Criteria for Evaluating Mental Disorders & Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-50765 (Aug. 21, 2000) ("The GAF score does not have a direct correlation to the severity requirements in our mental disorders listings."));  *see also Gutierrez v. Astrue*, No. 12–cv–1390 MEJ, 2013 WL 2468344, at *19 (N.D. Cal. June 7, 2013) ("A GAF score of 50 does not necessarily establish an impairment seriously interfering with the claimant's ability to perform basic work activities.").  Error with respect to an ALJ's rejection of a low GAF score, therefore, is not per se harmful.  Rather, a claimant must establish that the erroneous treatment of a GAF score is harmful in light of the entire record.

In this case, the record shows that although Dr. Hakeman assessed a GAF score of 50, she did not opine Mr. Riedinger is disabled and did not set forth functional limitations which the ALJ should have but did not consider, which were consistent with a GAF score of 50.  In short, because Mr. Riedinger points to nothing in the record showing Dr. Hakeman found limitations that were not addressed by the ALJ, he has not shown harmful error with respect to the ALJ's treatment of Dr. Hakeman's GAF scores or opinions.

**B.      Mr. Riedinger's testimony**

Mr. Riedinger contends, and the Court agrees, the ALJ erroneously rejected his testimony. Dkt. 10 at 13-17. Where, as here, there is no clear evidence or allegation of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony. *Molina v. Astrue,* 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ discounted Mr. Riedinger's testimony for several reasons.

First, the ALJ found Mr. Riedinger did not receive medical treatment that "one would expect of a totally disabled individual." Tr. 19. In support of this finding, the ALJ indicated Mr. Riedinger did not need hospitalization and instead only received counseling, therapy and medications, for his mental illness. *Id.* The ALJ erred. "[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996) (citations and quotations omitted); *see al*so *Garrison v. Colvin*, 759 F.3d 995, (9th Cir. July 14, 759 F.3d 995, 2014 WL 3397218, at *23, n. 24 (9th Cir. July 14, 2014) (quoting *Nguyen v. Chater).* But this is what the ALJ did.

Additionally, the ALJ's finding is not supported by substantial evidence. An ALJ may discount a claimant's testimony when that testimony is inconsistent with a conservative treatment plan. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir.1999) (as amended) (ALJ properly considered, as part of credibility evaluation, treating physician's failure to prescribe, and claimant's failure to request, medical treatment commensurate with the "supposedly excruciating" pain alleged, and the "minimal, conservative treatment") (citation omitted). Here, however, Mr. Riedinger sought treatment from Dr. Wu, his primary care doctor, was prescribed medication and was referred for additional mental health treatment. Tr. 18. Mr. Riedinger

REPORT AND RECOMMENDATION - 9

followed through with the referral and began treating with Dr. Walker for therapy and continued medications. *Id.* There is no evidence, however, that more intensive treatment had been recommended, or that Mr. Riedinger refused, without reason, to follow a prescribed course of treatment.

Second, the ALJ rejected Mr. Riedinger's testimony on the grounds it is inconsistent with the medical evidence which showed improvement with treatment. *Id.* This general finding is insufficient. As the Court in *Treichler v. Comm'r of Social Sec. Admin.,* 775 F.3d 1090 1102 (9the Cir. 2014) stated, the ALJ is required:

> to 'specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines the testimony.' *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.2001). That means '[g]eneral findings are insufficient.' *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995); *see Holohan*, 246 F.3d at 1208 (concluding "that the ALJ's credibility determination was erroneous" because it was based on the ALJ's characterization of "the 'record in general' ").

The ALJ failed to explain what evidence supported his finding and thus failed to provide a clear and convincing reason to reject Mr. Riedingers' testimony.

Third, the ALJ found Mr. Riedinger's daily activities were inconsistent with his testimony about the extent of his limitations. The Commissioner defends the ALJ arguing that Mr. Riedinger's ability to live alone, care for himself, go on walks, care for several animals, do hobbies such as coin collecting and beach walking, building a chicken coop, socialize with friends and fly to California in 2014 support the ALJ's finding. Dkt. 11 at 3-4. The ALJ erred. While an ALJ may consider a claimant's daily activities when evaluating his or her credibility, an ALJ may not penalize a claimant for attempting to live a normal life in the face of his limitations. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . .

does not in any way detract from h[is] credibility as to h[is] overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007 (*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination:" (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn*, 495 F.3d at 639.  Here, neither ground is supported by substantial evidence. Mr. Riedinger did not testify he could not care for himself, had no hobbies, and had no friends. He did testify he experienced anxiety, had panic attacks, and fear of crowds which is consistent with his testimony about his trip to California to see his ill mother.  He testified it was a difficult trip, and that he had a panic attack on the plane. Tr. 44.  Mr. Riedinger also did not claim he was disabled due to back problems or pain.  He testified that his "back is fairly good.  I just have to be careful, I can't lift much." Tr.  57.  He did not testify that his back prevented him from walking, caring for his animals or from making a chicken coop.

And fourth, Mr. Riedinger testified that his mental health problems were related to being assaulted in 2000.  The ALJ rejected Mr. Riedinger's testimony on the grounds that he worked for years after the 2000 assault, "managing his alleged symptoms for many years before deciding to quit his job in February 2013 due to alleged difficulty on the job from alleged worsening symptoms." Tr. 20.  This is not a clear and convincing reason to reject Mr. Riedinger's testimony, and one which the Commissioner does not defend in her response brief.  Mr. Riedinger never claimed the 2000 assault immediately disabled him, and never claimed disability until February 2013, when he began to receive medical treatment for his mental health symptoms.  Hence the fact Mr. Riedinger worked before he claimed he was disabled is not

evidence that undermines his testimony about the limitations arising after his onset date of February 2013.

The Court notes that in the ALJ's view, Mr. Riedinger's mental condition did not worsen between 2000 and 2013, as additional grounds to discount his testimony. Ostensibly, the implication is that if Mr. Riedinger could work between 2000 and 2013, and his condition did not worsen, his claim of disability should be rejected. However, this implication is not supported by the substantial evidence. The medical record shows Mr. Riedinger began receiving mental health treatment for the first time in February 2013, his onset date, and was referred for further treatment and medications. The record thus shows he did worsen between 2000 and 2013.

The Court also notes the ALJ rejected Mr. Riedinger's testimony on the grounds his employer found he was a good worker, Mr. Riedinger did not tell his employer he was having mental health problems, and that he apparently told his employer that he was leaving to care for his ailing mother. Tr. 20. The ALJ apparently viewed these circumstances as showing Mr. Riedinger stopped work for reasons other than disability and is thus not credible. This view is not supported by substantial evidence because it fails to account for Mr. Riedinger's testimony that he did not tell his employer about his mental health problems because he was "self-conscious" due to the "stigma" attached to mental illness. Tr. 50. Hence, contrary to the ALJ's finding, the record establishes a perfectly reasonable and plausible explanation for why Mr. Riedinger stopped work without telling his employers about his mental illness.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

1   On remand, the ALJ should reassess Mr. Riedinger's testimony, develop the record as
2   needed, reconsider Mr. Riediner's RFC as appropriate and proceed to steps four and five as
3   required.

4   A proposed order accompanies this Report and Recommendation.  Any objection to this
5   Report and Recommendation must be filed and served no later than **February 15, 2017.**  If no
6   objections are filed, the Clerk shall note the matter for **February 17, 2017,** as ready for the
7   Court's consideration.  If objections are filed, any response is due within 14 days after being
8   served with the objections.  A party filing an objection must note the matter for the Court's
9   consideration 14 days from the date the objection is filed and served.  Objections and responses
10  shall not exceed ten pages.  The failure to timely object may affect the right to appeal.

11  DATED this 1st day of February, 2017.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge